[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Before the court are three motions: (A) the wife's Motion for Contempt, (B) the husband's Motion for Modification, (C) the wife's Motion for Judgment on Arrearage.
The first motion re: contempt concerns the failure of the exhusband (hereinafter referred to as "H") to make alimony payments to his exwife (hereinafter referred to as "W") from January 1, 1989 through March of 1992. The dissolution decree ordered H to pay to W the sum of $200 per week as alimony beginning in July of 1987. H was also ordered to make certain other payments on outstanding debts that were owing and he did do so.
In the order for dissolution, it ordered the sale of the home with the proceeds to be divided between the parties. The decree was silent as to whom would be responsible for the payment of the mortgage until the sale of the home took place. H and W entered into a side agreement that H would pay the mortgage and give W $300 per month instead of paying her the $200 a week alimony. W testified to receiving no payments from January 1, 1989 through March of 1992 and that H owes her $33,400 to date. W, during the year of 1988 and part of 1989, maintained a post office box in Seymour Connecticut. She received checks from H at this post office box during the year of 1988. However, since she never received any communication from H at the post office box during 1989 she closed it in November of 1989.
After failing to receive her alimony checks, W claims she did not know the whereabouts of H and hired five separate attorneys to try and find him. She also enlisted the assistance of the Legal Aid who traced him to the State of Tennessee. She hired an attorney in Tennessee upon the advice of her present counsel and a Tennessee attorney found H.
W gave evidence that during all of the years she did not work and supported herself with the proceeds of the sale of the house that she received in the sum of $53,000. She also took care of her two grandchildren and received $450 per month from the State of Connecticut for their support.
H's evidence on this issue is as follows: that after the dissolution he moved to Tennessee and lived at Stone Way Lane, Memphis, subsequent to Memphis he lived in Moore's Court, Brentwood CT Page 6547 for one and one half years, and since September 1990 he has been living at 1718 Winwood Drive, Chattenboro, Tennessee. Upon the closing of the sale of the house, each party had withheld in escrow by their attorney the sum of $8,000 to protect against claims. W could not remember when her attorney, Mr. Hale, gave her the $8,000 escrow. However, she does indicate that she received all the money that was due to her from the sale of the house from Mr. Hale. H was very clear that he received his escrow of $8,000 in November of 1989. At the time he received the $8,000 escrow, H believed, according to his testimony, that all claims as to alimony were resolved because he understood that this was the purpose of the escrow. He further testified he had been advised by copies of letters to W's attorney, Mr. Hale, that his attorney was going to send him his escrow. He indicated he learned that Attorney Hale had communicated with his attorney, Mr. Thornberry, that he had not heard from his client in over a year. According to H, he employed Mr. Thornberry to find W and file a Motion for Modification of Alimony since he claims that his earnings have diminished since he left the State of Connecticut.
This requested modification was made prior to the time of receiving the escrow funds. H was made aware by his attorney, Mr. Thornberry, that W could not be found and therefore could not be served with the modification papers. At one time, H stated he was advised to stop alimony payments and he believed that he would hear from her very quickly if he stopped the alimony payments.
This is a case where both parties claim they were continually looking for the whereabouts of each other. The court finds W's testimony to be more credible and finds that H failed to comply with the alimony order of the court and, accordingly, is found to be in contempt of such order and is hereby assessed the sum of $350 which shall be paid to W towards her counsel fees.
The next motion is H's Motion for Modification. The court finds no justification to modify the alimony order and therefore such request is denied.
The next motion is W's Motion for Judgment on the Arrearage. The court finds the arrearage to be $33,400 as of 3/20/92. In addition, 14 weeks to the date of this memo equals $2,800. Accordingly, judgment may enter in favor of the W for $36,200 as the owed arrearage plus $350 imposed on the contempt for a total of $36,550.
SO ORDERED.
William J. McGrath, Judge CT Page 6548